23CA0302 Peo v Mercado 10-23-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA0302
Weld County District Court No. 21CR1127
Honorable Allison J. Esser, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

David Michael Mercado,

Defendant-Appellant.

---

APPEAL DISMISSED

Division VII
Opinion by JUDGE MOULTRIE
Tow and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 23, 2025

---

Philip J. Weiser, Attorney General, Trina K. Kissel, Senior Assistant Attorney General and Assistant Solicitor General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Dilyn K. Myers, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, David Michael Mercado, appeals the judgment of conviction entered upon a jury verdict finding him guilty of aggravated robbery. We dismiss the appeal.

## I.     Background

¶ 2     The jury heard the following evidence at trial.

¶ 3     Two officers responded to a disturbance on southbound I-25 near Mead, Colorado. The officers encountered Mercado, who was walking down the highway. Body camera footage shows Mercado with face and neck tattoos wearing a white t-shirt and red gym shorts. Mercado fled. The officers decided not to chase him on foot but pursued him in their vehicles, eventually losing sight of him after he walked onto the highway in the northbound lanes.

¶ 4     At that time, Samuel Blandin was driving northbound on I-25 when traffic came to a stop near the Mead exit. Mercado walked around the front of Blandin's truck and got in on the rear passenger side. Blandin described Mercado as wearing a white tank top and red gym shorts and having tattoos on his neck. Mercado told Blandin that he was carjacking him and would shoot him if he didn't start driving and do as he was told.

¶ 5 Mercado asked to use Blandin's phone, but Blandin refused. Mercado then punched Blandin in the face, breaking his glasses and injuring his nose. Blandin gave Mercado the passcode for his phone, after which Mercado called a woman and asked her to pick him up. At one point, Mercado noticed a dashboard camera in the truck, tried to remove it, and eventually ripped the wires out.

¶ 6 Per Mercado's instructions, Blandin got off I-25 and drove to two gas stations. At one of the gas stations, one of the officers who had responded to the initial disturbance signaled for Blandin to pull over, but Blandin kept driving. At the second gas station, Blandin drove around before Mercado got out, taking Blandin's phone with him. Blandin drove home and called 911.

¶ 7 Blandin identified Mercado as the man who had gotten in his truck in both a photo lineup the night of the incident and at trial.

¶ 8 The prosecution charged Mercado with second degree kidnapping and aggravated robbery.

¶ 9 The jury was instructed on the elements of second degree kidnapping. If the jury found Mercado guilty of second degree kidnapping, it was instructed to answer a special interrogatory:

2

Was the person kidnapped also the victim of another specified crime? (Answer "Yes" or "No")

The person kidnapped was also the victim of another specified crime only if:

1. the person kidnapped was the victim of the crime of robbery as defined in instruction no. 15.

¶ 10      Jury instruction number fifteen included the following elements for the crime of robbery:

(1)    That the defendant,

(2)    in the State of Colorado, at or about the date and place charged,

(3)    knowingly,

(4)    took anything of value,

(5)    from the person or presence of another,

(6)    by the use of force, threats, or intimidation.

¶ 11      The jury instruction for aggravated robbery listed the same six elements plus two additional elements:

(1)    That the defendant,

(2)    in the State of Colorado, at or about the date and place charged,

(3)    knowingly,

(4)    took anything of value,

3

> (5) from the person or presence of another,
>
> (6) by the use of force, threats, or intimidation, and
>
> (7) during the act of robbery or immediate flight therefrom,
>
> (8) possessed any article used or fashioned in a manner to lead any person who was present reasonably to believe it was a deadly weapon or represented verbally or otherwise that he was then and there armed with a deadly weapon.

¶ 12    In closing argument, the prosecutor told the jury that second degree kidnapping was a "two-part charge," consisting of kidnapping and robbery. The prosecutor argued that the elements of robbery were met because Mercado took Blandin's phone and hit him in the face. And he argued that the elements of aggravated robbery, "which has more elements than the robbery itself," were met by those same facts, plus the evidence that Mercado threatened to shoot Blandin.

¶ 13    Defense counsel argued that the prosecution had failed to prove that Mercado was the individual who got in Blandin's truck.

¶ 14    A jury found Mercado guilty of both aggravated robbery and second degree kidnapping. However, in the special interrogatory for

second degree kidnapping, the jury found that Mercado didn't commit the crime of robbery against Blandin.

¶ 15   The trial court sentenced Mercado to twenty years in prison for aggravated robbery concurrent with twelve years in prison for second degree kidnapping.

## II.   Waiver

¶ 16   For the first time on appeal, Mercado contends that the jury's unanimous special interrogatory finding that he didn't commit robbery against the kidnapped victim was legally and logically inconsistent with its guilty verdict that he committed aggravated robbery.  He reasons that the interrogatory finding negates at least one of the substantive elements of aggravated robbery, and therefore the aggravated robbery verdict is infirm.  He requests vacatur of his aggravated robbery conviction for structural error, or in the alternative, reversal for plain error and remand for a new trial.[1]

¶ 17   Although the parties agree that Mercado didn't preserve his argument for appeal, they dispute whether appellate review is

---

[1] Mercado does not appeal his second degree kidnapping conviction.

appropriate based on waiver.  We agree with the People that Mercado waived his claim.

## A.    Additional Facts

¶ 18    After the jury returned its verdicts, the trial court read the verdicts aloud, including the special interrogatory answer.  The court then polled the jury, and all jurors confirmed the verdicts. Defense counsel didn't object.

¶ 19    At sentencing, the trial court noted the jury's guilty verdicts and interrogatory response:

> THE COURT: With regard to the kidnapping, it's listed in the PS[I] as a Class 2 felony.  The jury — when they were asked the question, although, I acknowledge it's somewhat in conflict with their other finding — the jury did not find that any conditions under [section 18-3-302(3)(b), C.R.S. 2025] existed.  They were not asked to make any findings under [section 18-3-302(4)].  And so, I think that pursuant [section 18-3-302(5)], the second degree kidnapping charge would be a Class 4 felony, subject to mandatory aggravation.  So, looking at a range of 4 to 12.  Do the People agree with that?
>
> [PROSECUTOR]: I would agree with that, Your Honor.
>
> THE COURT: Okay.  [Defense counsel]?
>
> [DEFENSE COUNSEL]: That's what I believe.

THE COURT: Okay. And, I think — I don't often do this, but I want to make sure that the Department of Corrections is classifying this correctly, so I think I may issue a written ruling just finding that based on their findings, it should be a Class 4 felony, rather than a Class 2 felony.

[DEFENSE COUNSEL]: That's correct. And, I think would be made explicit on [the mittimus].[2]

¶ 20 The trial court then imposed concurrent sentences because "although, the jury did not convict for kidnapping, where the victim is also a robbery — which again, . . . I think is somewhat confusing, . . . these really are the same actions." Again, defense counsel didn't object.

## B. Applicable Law

¶ 21 Waiver is "the intentional relinquishment of a known right or privilege." *People v. Rediger*, 2018 CO 32, ¶ 39 (quoting *Dep't of Health v. Donahue*, 690 P.2d 243, 247 (Colo. 1984)). We indulge every reasonable presumption against waiver. *Id.*

---

[2] Mercado was charged with second degree kidnapping under section 18-3-302(1), (3), C.R.S. 2025. Section 18-3-302(3)(b) says that second degree kidnapping is a class 2 felony if the person kidnapped was a victim of robbery. And section 18-3-302(5) says that second degree kidnapping is a class 4 felony "except as provided in subsections (3) and (4) of this section."

¶ 22    "A waiver may be explicit, as, for example, when a party expressly abandons an existing right or privilege, or it may be implied, as when a party engages in conduct that manifests an intent to relinquish a right or privilege or acts inconsistently with its assertion." *Forgette v. People*, 2023 CO 4, ¶ 28.  But "the mere failure to raise an issue neither amounts to the type of unequivocal act indicative of a waiver nor constitutes the type of conduct that clearly manifests any intent to relinquish the claim." *Phillips v. People*, 2019 CO 72, ¶ 21 (citation modified).

¶ 23    Whether a claim has been waived depends on the particular circumstances of a case.  *People v. Garcia*, 2024 CO 41M, ¶ 45 (citing *People in Interest of A.G.*, 262 P.3d 646, 652 (Colo. 2011)). The supreme court has been willing to find implied waiver "when the record demonstrates that counsel was aware of the grounds for an objection but failed to raise it." *Id.* at ¶ 46.  And in some cases, the supreme court's willingness to find an implied waiver has been strengthened if there is "a concern that a defendant could intentionally forego objecting to an error 'as a strategic parachute to preserve an avenue of attack on appeal.'" *Id.* at ¶ 47 (quoting *Stackhouse v. People*, 2015 CO 48, ¶ 17).

¶ 24    Waiver extinguishes error and therefore appellate review.
*Rediger*, ¶ 40.

## C.    Analysis

¶ 25    The People argue that Mercado waived his inconsistent verdict argument by failing to contemporaneously object when the trial court read the verdict and polled the jury, and at sentencing when the trial court noted that the verdicts were "somewhat in conflict" and "somewhat confusing."  Specifically, they assert that defense counsel didn't object after the verdict was read despite it being "obvious" that the interrogatory finding seemed inconsistent with the jury's finding of guilt for aggravated robbery.  They also assert that Mercado had "strategic reasons" to forgo objecting: (1) if defense counsel had objected before the jury was discharged, the trial court could have required the jury "to reread the jury instructions and fill out new verdict forms, exposing Mercado to conviction for an F2 and an F3 rather than the F3 and F4 reflected in the existing verdicts"; and (2) by not objecting, Mercado strategically preserved an avenue of attack on appeal, namely, the attack he asserts now with a request to have his aggravated robbery conviction vacated.  The People also cite *People v. Tee*, 2018 COA

84, ¶ 23, to argue that "the trial court and defense counsel were involved in an ongoing, interactive exchange" at sentencing relevant to the alleged inconsistency, and we should therefore infer waiver from defense counsel's lack of objection.

¶ 26    Mercado counters that the record shows no evidence that defense counsel was aware of the alleged verdict inconsistency or had any strategic reasons to stay silent when the verdicts were read.  He further asserts that, at sentencing, the trial court and defense counsel only had a limited exchange regarding the mittimus and the class of felony for kidnapping, which "does not provide sufficient evidence that defense counsel knew of legal grounds for objecting to the inconsistent aggravated robbery verdict and, for strategic reasons, intentionally chose not to do so."

¶ 27    We conclude that Mercado indeed waived his argument by not contemporaneously objecting when the trial court read the verdicts aloud and at sentencing.  After the court read the verdicts, as the People point out, it was obvious that there was a possible ambiguity between the aggravated robbery verdict and the special interrogatory finding.  *See People v. Forgette*, 2021 COA 21, ¶ 30 ("Forgette's defense counsel was aware that a juror was asleep

during the presentation of evidence but chose to remain mute regarding a remedy. The juror's closed eyes in this case were as apparent to defense counsel as the closed doors of the courtroom in *Stackhouse*."), *aff'd in part, vacated in part on other grounds*, 2023 CO 4. And at sentencing, the court put defense counsel on notice that the verdicts were "somewhat in conflict" and "somewhat confusing." Yet, counsel didn't object at either instance. Furthermore, counsel was "involved in an ongoing, interactive exchange" with the court at sentencing regarding whether the kidnapping conviction would be a class 2 or class 4 felony *based on the interrogatory finding. Tee*, ¶ 23. Counsel fully agreed with the court that it should enter a conviction for a class 4 felony. Based on this record, it is apparent that "counsel was aware of the grounds for an objection but failed to raise it." *Garcia*, ¶ 46.

¶ 28 Moreover, Mercado had potential strategic motives for not objecting to the allegedly ambiguous verdicts. As evidenced by the colloquy between the trial court and defense counsel, he evaded a class 2 felony conviction in favor of a class 4 felony. If counsel had objected when the verdicts were read, there is a possibility that the court would have required the jury to return to deliberations to

11

resolve the ambiguity, thereby exposing Mercado to a class 2 felony kidnapping conviction. And by not objecting at trial or at sentencing, counsel preserved Mercado's current attack on appeal, in which he requests that his aggravated robbery conviction be vacated.

¶ 29    Importantly, we view supreme court precedent where waiver was not found as distinguishable from Mercado's case. In *Rediger*, the People argued that Rediger waived his objection to a constructive amendment of the complaint when his counsel stated that counsel was "satisfied" with the jury instructions. *Rediger*, ¶ 41. The supreme court found no waiver because the record contained no evidence that Rediger (1) "intended to relinquish his right to be tried in conformity with the charges set forth in his charging document when he generally acquiesced to the jury instructions," or (2) "knew of the discrepancy between the People's tendered jury instructions and the charging document." *Id.* at ¶¶ 42-44.

¶ 30    In *Phillips*, the supreme court concluded that the "mere failure" of defense counsel to include Phillips's unpreserved appellate contentions in a motion to suppress didn't, by itself,

12

constitute waiver. *Phillips*, ¶ 38. Likening the case to *Rediger*, the court determined that the record was "barren of any indication that defense counsel considered raising the unpreserved contentions before the trial court but then, for a strategic or any other reason, discarded the idea." *Id.* at ¶ 22.

¶ 31 Finally, in *People v. Turner*, 2022 CO 50, the supreme court discussed whether Turner waived his challenge to the trial court's closure of the courtroom to his codefendant's wife by failing to join in the codefendant's objection or lodge his own objection. *Turner*, ¶ 9. The court concluded there was no waiver because "strategic choice does not appear to be what happened here." *Id.* at ¶ 13. The court reasoned that defense counsel knew of the right to a public trial but didn't "know enough about the underlying incident to object to [the wife's] exclusion." *Id.*

¶ 32 Contrary to this line of cases, the record here clearly evidences that defense counsel was aware of the alleged inconsistency between the aggravated robbery verdict and the special interrogatory response. At trial, the trial court read aloud the verdicts and the interrogatory response. At sentencing, the court noted that the verdicts were "somewhat in conflict" and "somewhat

confusing," and defense counsel engaged in a colloquy with the court regarding whether the court should enter a class 2 or class 4 felony conviction for second degree kidnapping based on the interrogatory response. Furthermore, as we have concluded, Mercado's counsel had potential strategic reasons for not objecting at the trial level.

¶ 33    Because (1) defense counsel was made aware of the alleged ambiguity between the aggravated robbery verdict and the special interrogatory finding but failed to object, and (2) by failing to object, defense counsel preserved his current attack on appeal, we conclude that Mercado waived his inconsistent verdict argument. *See Garcia*, ¶ 51 (finding waiver and noting the "perverse incentive" inherent in a scenario where defense counsel knew of the grounds for a judge's statutory disqualification but failed to raise the issue); *Stackhouse*, ¶ 16 ("Allowing a defense attorney who stands silent during a known [courtroom] closure to then seek invalidation of an adverse verdict on that basis would encourage gamesmanship, and any 'new trial would be a "windfall" for the defendant . . . .'"); *Forgette*, 2023 CO 4, ¶ 34 (because defense counsel was fully aware of a sleeping juror but did not object or ask the trial court to take

any action, the defendant intentionally relinquished his known right and therefore waived any objection on appeal).

¶ 34 And because waiver extinguishes error, there is nothing for us to review. *See Rediger*, ¶ 40.

### III. Disposition

¶ 35 The appeal is dismissed.

JUDGE TOW and JUDGE LUM concur.